IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

DAVID WHITMORE,                )
                               )
         Petitioner,           )
                               )
v.                             )    Case No. CIV-10-1409-R
                               )
DAVID MILLER, LCF WARDEN,      )
                               )
         Respondent.           )

## REPORT AND RECOMMENDATION

Mr. David Whitmore, a state inmate, seeks habeas relief for alleged errors in the computation of time to be served. In part, the Respondent moves for summary judgment on grounds of timeliness.[1] The Court should grant the motion.

### Background

Mr. Whitmore alleges that his "*Ekstrand* credits"[2] were calculated in one manner from 1989-2002 and another from 2002-2010. Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody at pp. 5, 14 (Dec. 30, 2010) ("Petition"). The

---

[1] Mr. Miller filed the motion as one for dismissal. *See* Respondent's Motion to Dismiss Petition for Writ of Habeas Corpus (Jan. 25, 2011) ("Respondent's Dispositive Motion"). But, the Court converted the Respondent's motion to one for dismissal or, in the alternative, for summary judgment. Order (Jan. 26, 2011).

[2] In *Ekstrand v. State*, 791 P.2d 92, 95 (Okla. Crim. App. 1990), the Oklahoma Court of Criminal Appeals invalidated a statutory amendment restricting the availability of earned credits. As a remedy, the court held that inmates disadvantaged by the statutory charge could obtain "credits allotted under the statute effective on the date their crime was committed." *Id.*

Petitioner seeks approximately "2,700 days, if not more,"[3] for the time period of "1989 . . . until Nov. 18th, 2010."[4] Mr. Whitmore filed the habeas petition on December 28, 2010.[5]

## Construction of the Petitioner's Habeas Petition

Mr. Whitmore filed the habeas petition on a form used in cases arising under 28 U.S.C. § 2254. Petition at p. 1. But Mr. Whitmore is challenging the manner in which his sentence is being carried out. As a result, the petition is actually governed by Section 2241, rather than Section 2254, of Title 28.[6]

## Standard for Summary Judgment

Federal statutes do not address the standard for summary judgment in habeas proceedings. Thus, the Federal Rules of Civil Procedure apply. *See* Fed. R. Civ. P. 81(a)(4). Under this rule, summary judgment is necessary when the moving party shows the absence of a genuine dispute about a material fact and his entitlement to judgment as a matter of law. Fed. R. Civ. P. 56(a).

---

[3] Petition at p. 14.

[4] Petitioner's Motion to Respond to Respondent's Motion to Dismiss Petition for Writ of Habeas Corpus at p. 12 (Mar. 4, 2011) ("Petitioner's Response").

[5] The petition is deemed "filed" on the day that he gave it to prison officials for mailing. *See Fleming v. Evans*, 481 F.3d 1249, 1255 n.2 (10th Cir. 2007). The Petitioner verifies that date as December 28, 2010. Petition at p. 14.

[6] *See*, *e.g.*, *Yellowbear v. Wyoming Attorney General*, 525 F.3d 921, 924 (10th Cir. 2008) (explaining that Section 2241 is used to attack the execution of a sentence, while Section 2254 is used to attack the validity of a conviction or sentence).

Timeliness of the Present Action

The habeas claim would be untimely even when the Court views the evidence in the light most favorable to Mr. Whitmore.

The limitations period is one year and began to run when "the factual predicate of the claim . . . could have been discovered through the exercise of due diligence." Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2244(d)(1)(D) (2006); *see infra* pp. 8, 10.

The Petitioner admits that in June 2009 he received a copy of his "CRC" and that this document revealed his credits. Petitioner's Response at pp. 7, 11. He also admits that when he saw his CRC, he discovered that he had not been receiving "*Ekstrand* Credits the way that [he] was suppose [sic] too [sic]."[7] Thus, the factual predicate could have been discovered with reasonable diligence as early as June 2009.[8]

A similar issue arose in *Algenstedt v. Champion*, 42 Fed. Appx. 129 (10th Cir. June 11, 2002) (unpublished op.). There an Oklahoma prisoner alleged that prison officials had been miscalculating his earned credits for years. *See Algenstedt v. Champion*, 42 Fed. Appx. 129, 130 (10th Cir. June 11, 2002) (unpublished op). For purposes of 28 U.S.C.

---

[7] Petition at p. 5; *see* Petitioner's Response at p. 11 ("Once he was finally able to see his CRC, he discoveried [sic] that he had not been receiving his Ekstrand days . . . .").

[8] Mr. Miller believes that the factual predicate should have been discovered earlier, relying on a state statute and Department of Corrections policies which indicate a prisoner should receive a copy of his sentence calculation every month. Respondent's Dispositive Motion at pp. 3, 7. The Court need not decide whether the factual predicate was reasonably discoverable before June 2009.

§ 2244(d)(1)(D), the issue of timeliness turned on when the habeas petitioner should reasonably have known that prison officials were miscalculating his credits. *See id.*, 42 Fed. Appx. at 131. The Tenth Circuit Court of Appeals held that the petitioner should reasonably have been able to learn the factual predicate for his claim by review of the CRC cards that he had received. *Id.*

*Algenstedt v. Champion* is persuasive in light of the strength of the reasoning and the similarity in the facts. Unlike the petitioner in *Algenstedt*, Mr. Whitmore generally denies receipt of the monthly CRC cards. However, he admits that he was able to "see" his CRC in June 2009. *See supra* p. 3 (citing Petitioner's Response at p. 7).[9] From this document, Mr. Whitmore discovered that there were "several errors in the way [his] [*Ekstrand* credits] had been calculated . . . ." Petition at p. 5; *see supra* p. 3. In these circumstances, Mr. Whitmore's concession is fatal on the issue of timeliness under Section 2244(d)(1)(D). Accordingly, in the absence of tolling, the limitations period would have begun in June 2009 and ended in June 2010. *See supra* p. 3 (stating that the limitations period is one year).

In appropriate circumstances, the limitations period may be tolled for equitable reasons. *See Holland v. Florida*, __ U.S. __, 130 S. Ct. 2549, 2560 (2010). However,

---

[9] In *Lenoir v. Dinwiddie*, 2008 WL 2834935 (N.D. Okla. July 18, 2008) (unpublished op.), the court addressed a situation in which the petitioner denied receipt of the CRC card at the relevant time-period. *See Lenoir v. Dinwiddie*, 2008 WL 2834935, Westlaw op. at 6 n.11. Even with this allegation, the Northern District of Oklahoma held that the factual predicate was reasonably discoverable under Section 2244(d)(1)(D) because the petitioner could have requested a copy of the CRC card. *Id.* The court concluded that if the petitioner had asked for the CRC card, he could have seen that he had not received the credits in question. *Id.*, 2008 WL 2834935, Westlaw op. at 6.

equitable tolling would be available only if an extraordinary circumstance stood in the Petitioner's way and prevented timely filing. *See Lawrence v. Florida*, 549 U.S. 327, 336 (2007). Mr. Whitmore presents no argument which would implicate equitable tolling.

Tolling is also appropriate for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending . . . ." Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2244(d)(2) (2006). But even the most generous assumptions on tolling would not suffice to salvage the habeas action.

For example, the Court may assume that without tolling, the limitations period would have ended at the close of June 2010. With this assumption, one might urge tolling based on the pendency of the state mandamus action.[10] But that action was pending for only 94 days.[11] With 94 days of tolling the limitations period would have ended on October 4, 2010,[12] and Mr. Whitmore waited until December 28, 2010 to file the habeas petition. *See*

---

[10] *See Rogers v. Ward*, 2007 WL 222004, Westlaw op. at 3 (N.D. Okla. Jan. 25, 2007) (unpublished op.) (holding that a habeas claim regarding a sentence calculation was tolled for the time spent in state court in mandamus proceedings).

[11] The state mandamus petition was initiated on June 14, 2010. *See* Petition at p. 5; *see also* Petition at pp. 2-4, *Whitmore v. Department of Corrections*, Case No. CV-2010-724 (Okla. Co. Dist. Ct. June 14, 2010). The state district court denied the mandamus petition, and the Oklahoma Court of Criminal Appeals affirmed on September 16, 2010. Order Denying Petition for Extraordinary Relief, *Whitmore v. Department of Corrections*, Case No. MA-2010-0830 (Okla. Crim. App. Sept. 16, 2010).

[12] The 94th day would have fallen on October 2, 2010. Because this deadline fell on a Saturday, Mr. Whitmore could have filed the habeas petition on the next business day: October 4, 2010. *See* Fed. R. Civ. P. 6(a)(1)(C) (eff. Dec. 1, 2009).

5

*supra* p. 2 & note 5. As a result, the habeas claim would have been untimely even with the most generous assumptions for tolling based on the state mandamus action.

Mr. Whitmore urges application of the "continuing tort" doctrine, arguing that his "injury" had continued until November 2010. Petitioner's Response at p. 12. In addressing this argument, the Court must determine whether the Petitioner has alleged facts suggesting an inability to ascertain the ultimate denial of *Ekstrand* credits in the CRC card in June 2009. The Court should answer in the negative.

Mr. Whitmore states that the bulk of his claim involves computation errors between 1989 and 2002.[13] As noted above, Mr. Whitmore has referred to continuation of the injury until November 2010. *See supra* p. 6. But, Mr. Whitmore elsewhere explains that this date simply reflected his continued inability to obtain *Ekstrand* credits since November 2008. Petitioner's Response at p. 12 n.3 (referring to the denial of *Ekstrand* credits for participation in a vo-tech class from November 2008 to November 2010).[14]

Without new wrongdoing after June 2009, when Mr. Whitmore admittedly saw his CRC card and learned how his *Ekstrand* credits were being calculated, the Court must

---

[13] Petitioner's Response at p. 3 (referring to calculation of credits "by the level," rather than "the rate," from 1989 to the middle of 2002); *id*. at p. 6 (stating that the *Ekstrand* credits should have been calculated differently from 1989 to 2001).

[14] In his response to the dispositive motion, Mr. Whitmore makes only one other reference to an action post-dating his receipt of the CRC card in June 2009. That reference involves action by prison authorities in July 2010 to correct a prior denial of credits by awarding 248 "E6/*Ekstrand* days." Petitioner's Response at pp. 6, 12. Obviously Mr. Whitmore is not seeking habeas relief for the corrective action that was allegedly taken in July 2010.

determine whether repetition of the alleged errors would have extended the limitations period under a "continuing tort" theory. The Court should answer in the negative.

No federal court has applied the "continuing tort" doctrine to extend the one-year period of limitations under 28 U.S.C. § 2244(d)(1)(D).[15] Indeed, a court would be hard-pressed to apply this doctrine in the context of a habeas action because the proceeding does not involve a "tort." *See*, *e.g.*, *Kucharski v. Leveille*, 478 F. Supp. 2d 928, 930 (E.D. Mich. 2007) (distinguishing between habeas proceedings and a "civil tort action"), *vacated on other grounds*, 526 F. Supp. 2d 768 (E.D. Mich. 2007). The difference is substantive, as well as semantic. The "continuing tort" doctrine applies, as the name suggests, in tort actions "by delaying" the "accrual or start date" for the tort. *Kovacs v. United States*, 614 F.3d 666, 676 (7th Cir. 2010) (citation omitted). Thus, courts have hesitated to apply the "continuing tort" doctrine outside the context of a tort claim.[16]

---

[15] *See Wolfel v. Timmerman-Cooper*, 2008 WL 5188188, Westlaw op. at 8 (S.D. Ohio Dec. 10, 2008) (unpublished report and recommendation by magistrate judge, stating that the court was unaware of "any cases applying the continuing violation doctrine to permit consideration of otherwise time-barred claims in federal habeas corpus proceedings"), *adopted*, 2009 WL 330294, Westlaw op. at 1 (S.D. Ohio Feb. 6, 2009) (unpublished order by district judge); *see also Gantt v. Anderson*, 2010 WL 3895576, Westlaw op. at 4 (M.D. N.C. Sept. 29, 2010) (unpublished report and recommendation by magistrate judge, stating that "[i]t is not clear that a 'continuing violations' theory can toll or otherwise affect the running of [the Antiterrorism and Effective Death Penalty Act of 1996] limitations period" (citation omitted)), *adopted*, Case No. 1:09CV50 (M.D. N.C. Dec. 1, 2010) (unpublished order by district judge).

[16] *See*, *e.g.*, *Chickasaw Telephone Co. v. Southwestern Bell Mobile Systems, Inc.*, 113 F.3d 1245, 1997 WL 290951, Westlaw op. at 3 n.7 (10th Cir. May 27, 1997) (unpublished op.) ("the continuing wrong doctrine is a tort concept which does not apply to contract actions" (citation omitted)).

7

In the context of 28 U.S.C. § 2244(d)(1)(D), application of the "continuing tort" doctrine would make little sense. The statute defines the start-date for the limitations period as "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2244(d)(1)(D) (2006); *see supra* p. 3; *infra* p. 10. This language contemplates a single date in which discovery of the factual predicate would become reasonably discoverable through the exercise of due diligence. The ability to discover that factual predicate, by definition, could not involve a "continuing" period of time. Thus, the Court could not apply the "continuing tort" doctrine in the context of 28 U.S.C. § 2244(d)(1)(D).

Under the plain language of Section 2244(d)(1)(D), the issue for the Court is when discovery of the factual predicate for the habeas claim would have been reasonably discoverable through the exercise of due diligence.[17] Mr. Whitmore learned in June 2009 that prison officials were not correctly calculating his "*Ekstrand* Credits." *See supra* pp. 3-4. With due diligence, he could have discovered the underlying cause of the miscalculation and sought redress. *See supra* p. 3. Consequently, the habeas claim would have been untimely even if the alleged wrongdoing had been repeated through November 2010, as Mr. Whitmore alleges.

---

[17] *See Sindar v. Turley*, 343 Fed. Appx. 326, 328 (10th Cir. Aug. 28, 2009) (unpublished op.) (rejecting the petitioner's reliance on the "continuing wrong" doctrine and holding that a habeas petition was untimely under Section 2244(d)(1)(D) because the factual predicate had been reasonably discoverable more than one year before the filing of the habeas petition).

The Tenth Circuit Court of Appeals addressed a similar issue in *Smith v. Grubbs*, 42 Fed. Appx. 370 (10th Cir. July 11, 2002) (unpublished op.). There the petitioner sought habeas relief based on changes in the standard for parole. *See Smith v. Grubbs*, 42 Fed. Appx. at 371. The federal district court held that the habeas claim was time-barred based on the petitioner's ability to discover the factual predicate upon the first decision to deny parole. *See id.*, 42 Fed. Appx. at 371-72. On appeal, the petitioner argued that each successive denial of parole would trigger a new period of limitations. *See id.*, 42 Fed. Appx. at 372. The Tenth Circuit Court of Appeals rejected this argument, reasoning that the petitioner "could have discovered the factual predicate of his claim" upon the first denial of parole and that "[t]he successive denials of parole did not involve separate factual predicates and therefore [did] not warrant separate statute of limitations calculations." *Id*.

The Western District of Oklahoma applied *Smith v. Grubbs* to the denial of *Ekstrand* credits in *Foster v. Workman*, 2006 WL 1042545 (W.D. Okla. Apr. 13, 2006) (unpublished op.). There the petitioner claimed that he was unable to earn *Ekstrand* credits through the inability to obtain a qualifying prison job. *See id.*, 2006 WL 1042545, Westlaw op. at 1-2. The Western District of Oklahoma held that the habeas claim was time-barred under Section 2244(d)(1)(D) because the petitioner had learned of the denial of *Ekstrand* credits by the time that he filed a request to staff. *Id*. The petitioner argued that the denial of reinstatement involved a continuing violation, and the federal district court rejected the argument with this explanation:

9

> It is the first date on which he became aware of the facts supporting his claim that determines the running of the limitation period. Petitioner's successive requests to prison staff for the same relief do not create new, discrete claims for the purpose of determining the relevant limitation period.

*Id*. The Tenth Circuit Court of Appeals dismissed a subsequent appeal, concluding that the district court's conclusion was "not reasonably debatable." *Foster v. Workman*, 198 Fed. Appx. 701, 703 (10th Cir. Sept. 22, 2006) (unpublished op.).

*Foster v. Workman* involved similar facts, and the district court's reasoning is equally applicable here. Under 28 U.S.C. § 2244(d)(1)(D), the one-year limitations period began when the factual predicate for the claim would have been reasonably discoverable to Mr. Whitmore. *See supra* pp. 3, 8. In this context, the "continuing tort" doctrine could not affect the start-date for the limitations period. As in *Foster v. Workman*, the prison authorities allegedly continued to miscalculate the *Ekstrand* credits. But, as in *Foster v. Workman*, continued miscalculations would not have affected the ability to discover the factual predicate at an earlier point in time. Thus, Mr. Whitmore is not entitled to extend the limitations period under a "continuing tort" theory, just as the petitioner was not able to do so in *Foster v. Workman*.

<u>The Petitioner's Request for an Evidentiary Hearing</u>

Mr. Whitmore requests an evidentiary hearing to "show the court[] how [he is] entitled to approx. 2,700 days , if not more." Petition at p. 14. In his response, the Petitioner clarifies that the evidentiary hearing is requested because "he has shown a factual basis for the claims

and the evidence is attached to this response or to the Respondent's petition." Petitioner's Response at p. 2.

The Court should deny the request for an evidentiary hearing.

"'The purpose of an evidentiary hearing,' . . . 'is to resolve conflicting evidence.'" *Hooks v. Workman*, 606 F.3d 715, 731 n.14 (10th Cir. 2010) (citation omitted). The Petitioner does not wish to "resolve" conflicting evidence. Instead, Mr. Whitmore simply wants the Court to consider the evidence that he and Mr. Miller have already presented. As discussed above, the Court should consider that evidence in determining whether to grant summary judgment to the Respondent. *See supra* pp. 2-10. Thus, an evidentiary hearing is unnecessary.

## Notice of the Right to Object

The parties can object to the present report and recommendation.

Any such objection must be filed with the Clerk of this Court by April 25, 2011. *See* Fed. R. Civ. P. 6(a)(1)(C), 6(d), 72(b)(2); 28 U.S.C. § 636(b)(1) (2009 supp.). The failure to timely object would foreclose appellate review of the suggested ruling.[18]

## Status of the Referral

The present report does not discharge the existing referral.

---

[18] *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *cf. Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

Entered this 7th day of April, 2011.

_Robert E. Bacharach_
Robert E. Bacharach
United States Magistrate Judge